UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:11-cr-00009-JMS-CMM |
| | ) | |
| CURTIS BILYOU, | ) -06 | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Compassionate Release**

On June 9, 2020, Curtis Bilyou, an inmate at FCI Oxford, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 881. Mr. Bilyou asks the Court to reduce his sentence to time served and to immediately release him due to the health risks arising from the COVID-19 pandemic. The Court appointed counsel to represent Mr. Bilyou. Dkt. 891. Mr. Bilyou, through counsel, filed a memorandum in support of his motion for compassionate release on November 19, 2020. Dkt. 903. The United States responded on November 27, 2020, dkt. 905, and Mr. Bilyou filed a reply on December 3, 2020, dkt. 907. The Government concedes that Mr. Bilyou has exhausted his administrative remedies for purposes of 18 U.S.C. § 3582(c)(1)(A). Dkt. 905 at 2. The motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

**I. Background**

On February 24, 2012, Mr. Bilyou pled guilty to one count of conspiracy to posses with intent to distribute and to distribute 50 grams or more of methamphetamine (actual) and 500 grams or more of methamphetamine (mixture). Dkts. 435, 451. In pleading guilty, Mr. Bilyou stipulated that he participated in a conspiracy to traffic methamphetamine. Dkt. 362 at 1. He received one-to-two-ounce quantities of methamphetamine from a co-defendant and distributed it in the Terre

Haute, Indiana, area. *Id.* When law enforcement searched Mr. Bilyou's residence, they found 23.6 grams of methamphetamine mixture (23.4 grams of actual methamphetamine), scales, and packaging material. *Id.* at 2. The amount of methamphetamine mixture distributed by co-conspirators and reasonably foreseeable to Mr. Bilyou was in excess of 5 kilograms, and the amount of actual methamphetamine distributed by co-conspirators and reasonably foreseeable to Mr. Bilyou totaled at least 700 grams. *Id.*

The Court sentenced Mr. Bilyou to 240 months of imprisonment and 10 years of supervised release. Dkt. 451. Before sentencing, the United States filed an information pursuant to 21 U.S.C. § 851 showing that Mr. Bilyou had been convicted of felony possession of methamphetamine in 2003. Dkt. 255. Because the United States filed the § 851 information showing a prior drug felony conviction, the mandatory minimum sentence for Mr. Bilyou under the law as it existed at the time was the 240-month sentence he received. 21 U.S.C. § 841(b)(1)(A)(viii) (eff. Aug. 3, 2010 to Dec. 20, 2018). Judgment was entered on March 2, 2012. Dkt. 451.

Mr. Bilyou is 42 years old. He has been in custody since April 27, 2011, and has served more than nine-and-a-half years in prison. The BOP lists his anticipated release date (with good-conduct time) as May 11, 2028. With good-conduct time included, Mr. Bilyou has served about 56% of his sentence.

Mr. Bilyou has complied with the terms of his imprisonment and utilized opportunities for self-improvement within the BOP. He has been disciplined only once during his more than 9 years of incarceration—a write-up for refusing to obey an order in August 2019. Dkt. 903-11. During his incarceration, Mr. Bilyou has earned his GED, completed various classes (including drug education), and maintained employment in the BOP. Dkt. 903-10. He also represents (without contradiction from the United States) that he has learned various job skills by working for Unicor

and has completed a 2000-hour apprenticeship. Dkt. 903-2 at 18. BOP records show that he has been rated as a medium recidivism risk, *see* dkt. 903-10, but Mr. Bilyou represents (without contradiction from the United States) that his case manager told him that this designation is a mistake and that the case manager will work to have him re-designated as a low recidivism risk, dkt. 903-2 at 18. Upon his release, Mr. Bilyou plans to live with his cousin in Terre Haute, Indiana. Dkt. 903-2 at 19. He represents that he has secured post-release employment with a construction company. *Id.*

FCI Oxford is experiencing a significant outbreak of COVID-19. As of December 4, 2020, the BOP reports that 99 inmates and 10 staff members at FCI Oxford have active cases of COVID-19; it also reports that 594 inmates and 59 staff members at FCI Oxford have recovered from COVID-19. https://www.bop.gov/coronavirus/ (last visited Dec. 4, 2020). Mr. Bilyou is obese and a former smoker. *See* dkt. 93-4 at 1; dkt. 903-9 at 1. The CDC (Centers for Disease Control and Prevention) recognizes that both of these conditions place him at a higher risk of severe illness if he contracts COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 4, 2020).

## II. Discussion

Mr. Bilyou argues that his increased risk of severe illness or death from COVID-19 creates an "extraordinary and compelling reason" justifying his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 903-2 at 5–16. He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 16–26.

In response, the United States concedes that Mr. Bilyou has presented an extraordinary and compelling reason warranting a sentence reduction because he has at least one condition that puts

him at increased risk of severe illness if he contracts COVID-19. Dkt. 905 at 6. Nonetheless, the United States argues that the Court should not release Mr. Bilyou because he has not shown that he would be safer outside of prison than in prison, arguing that the BOP is taking proactive steps to combat the spread of the virus at FCI Oxford. *Id.* at 8–10.[1] The United States also argues that Mr. Bilyou would pose a danger to the community if he were released and that the sentencing factors in § 3553 do not favor release. *Id.* at 10–13.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

---

[1] In its response, the United States also argued that Mr. Bilyou was not at a high risk of contracting COVID-19 while in custody because FCI Oxford was not experiencing an outbreak of COVID-19. Dkt. 905 at 6–7. Since the United States filed its response, an outbreak has occurred at FCI Oxford.

4

> 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the

5

caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, __ F. 3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety

of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

      A.      *Extraordinary and Compelling Reasons*

Mr. Bilyou does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case. Dkt. 907.

The United States concedes that Mr. Bilyou has presented an extraordinary and compelling reason warranting a sentence reduction, and the Court agrees. Mr. Bilyou has at least two conditions (obesity and being a former smoker) that increase his risk of experiencing severe symptoms if he contracts COVID-19. Moreover, he is incarcerated at an institution that is experiencing an outbreak of COVID-19 infections. While the Court appreciates that the BOP is taking steps to try to stem the spread of the virus at FCI Oxford, the nature of prisons means that there is very little that inmates like Mr. Bilyou can do to protect themselves once an outbreak begins. Thus, the United States' contention that Mr. Bilyou is safer at FCI Oxford than he would be if he were released is not well taken. Accordingly, the Court finds that Mr. Bilyou has demonstrated an extraordinary and compelling reason warranting a sentence reduction.

      B.  *Danger to any Other Person or the Community*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>>
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The United States argues that Mr. Bilyou would be a danger to the community if released because he distributed large amounts of a highly addictive drug and there is a danger that he will return to dealing controlled substances. Dkt. 905 at 12–13. It also notes that Mr. Bilyou has a history of violating probation and was on probation when he committed the instant offense. *Id.*

Mr. Bilyou's crimes were serious, and the conspiracy of which he was a part was responsible for bringing large amounts of methamphetamine into the Terre Haute area. But Mr. Bilyou was the sixth defendant in a 14-defendant conspiracy, and he was not a leader in the conspiracy. While he has one past felony conviction and several minor misdemeanor convictions, none of them involve violence or firearms. *See* dkt. 401 at 7–9. Moreover, Mr. Bilyou has now served more than 9 years in the BOP with an almost-perfect discipline record. During his

incarceration, he has earned his GED, maintained employment, completed drug education, and gained job skills that he can use when he is released.

Mr. Bilyou's past history of probation violations gives the Court some pause. *See* dkt. 401 at 7–9. Nonetheless, it concludes that increasing Mr. Bilyou's term of supervised release from 10 years to 12 years alleviates threats to the safety of the community. Upon release, Mr. Bilyou plans to live with his cousin, who will provide him with housing and support. And Mr. Bilyou represents that he has found post-release employment. The support of his family and the prospect of gainful employment—along with an increased term of supervised release—should help Mr. Bilyou transition back to being a law-abiding member of the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Bilyou does not presently pose a danger to any person or the community if his sentence is reduced to time served and the Court increases his term of supervised release to 12 years.

*C. Section 3553(a) Factors*

Finally, the United States argues that the § 3553(a) factors do not favor early release because releasing Mr. Bilyou after he has served only about half of his sentence would diminish the seriousness of the offense that he committed. Dkt. 905 at 12. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

>  **(3)** the kinds of sentences available;
>  **(4)** the kinds of sentence[s] and the sentencing range established for--
>    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>  **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>  **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>  **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Mr. Bilyou's conduct in this case was very serious. But Mr. Bilyou has been in custody for more than 9 years, which is a significant sanction. And Mr. Bilyou was not a leader of the conspiracy in which he participated. Mr. Bilyou will also be subject to supervision for 12 years, which will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of his conduct.

The Court recognizes that Mr. Bilyou has served only about 56% of his sentence. However, when considering a motion for sentence reduction under the First Step Act, a court can consider "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *United States v. Hudson*, 967 F.3d 605, 609 (7th Cir. 2020) (considering motions for sentence reduction under § 404 of the First Step Act). Mr. Bilyou has maintained a near-perfect discipline record over his more than 9 years of incarceration and has taken substantial steps to rehabilitate himself while incarcerated. Moreover, Mr. Bilyou was sentenced to the mandatory minimum sentence at the time of sentencing—240 months.  If he had been sentenced under the laws as they exist today, his mandatory minimum sentence would be significantly shorter. If his 2003 conviction qualified as a "serious drug felony" under the current version of 21 U.S.C. § 841, the mandatory minimum sentence would be only 15 years, and he might have only a few years remaining on his sentence.

21 U.S.C. § 841(b)(1)(A)(viii) (eff. Dec. 21, 2018). And if the 2003 conviction did not qualify as a "serious drug felony," then the mandatory minimum sentence would be only 10 years, and (with good conduct time), he might already have completed his sentence. *Id.* The change to the sentencing scheme further underscores the Court's conclusion that the time Mr. Bilyou has already served adequately reflects the seriousness of his offense and provides just punishment for that offense. *See United States v. Curtis*, No. CR 03-533 (BAH), 2020 WL 1935543, at *4 (D.D.C. Apr. 22, 2020) ("That a defendant sentenced today, identical in every way to the defendant in this case, would face 15.5–19.5 years' imprisonment is strong evidence that defendant's 17 years' of imprisonment adequately reflects the 'seriousness of [his] offense' and 'provide[s] just punishment for the offense.'"). When combined with the risk Mr. Bilyou faces from the COVID-19 pandemic, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Bilyou's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Bilyou's sentence and his immediate release from imprisonment, that Mr. Bilyou does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Bilyou's Motion for Compassionate Release, dkt. [881], **ORDERS** that Mr.

Bilyou's sentence of imprisonment be reduced to **time served as of December 9, 2020,** and further **ORDERS** the BOP to release Mr. Bilyou by **4:00 p.m. on December 9, 2020.** Counsel for the United States is **ORDERED** to transmit the AO248 Order to Mr. Bilyou's custodian no later than **5:00 p.m. on December 8, 2020.**

The **term of supervised release is extended from 10 years to 12 years.** The terms of supervised release imposed in the Judgment of March 2, 2012, remain the same with the addition of the following condition: Mr. Bilyou is ORDERED to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

**IT IS SO ORDERED.**

Date: 12/7/2020

*(signature)*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel